# Exhibit A

# STATE OF NORTH CAROLINA

_____GASTON_____ County

File No.
20-CVS- 944

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>MICKEY F. CROWE AND MARY E. CROWE | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address*<br>c/o Thomas Bumgardner; 13850 Ballantyne Corporate Pl; Suite 500 | |
| *City, State, Zip*<br>Charlotte          NC     28277 | G.S. 1A-1, Rules 3 and 4 |

| **VERSUS** | *Date Original Summons Issued* |
|---|---|
| *Name Of Defendant(s)*<br>ALLSTATE INSURANCE COMPANY | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br>ALLSTATE INSURANCE COMPANY<br>c/o NC Commissioner of Insurance<br>325 N. Salisbury Street<br>Raleigh          NC     27603 | *Name And Address Of Defendant 2* |
|---|---|

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Thomas D. Bumgardner<br>13850 Ballantyne Corporate Place<br>Suite 500<br>Charlotte          NC     28277 | *Date Issued*<br>3-4-20 | *Time*<br>2:19    ☐ AM ☒ PM |
|---|---|---|
| | *Signature*<br>E. Booker | |
| | ☒ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*   ☐ *Assistant CSC*   ☐ *Clerk Of Superior Court* | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE
COUNTY OF GASTON         SUPERIOR COURT DIVISION

20-CVS- 944

MICKEY F. CROWE AND MARY E.
CROWE,

Plaintiffs,                           **COMPLAINT**

v.                              **(Jury Trial Requested)**

ALLSTATE INSURANCE COMPANY,

Defendant.

NOW COME the Plaintiffs, by and through counsel, and hereby says and alleges as follows:

### PARTIES

1. Plaintiff Mickey F. Crowe is a citizen of South Carolina and resides in York County.

2. Plaintiff Mary E. Crowe is a citizen of South Carolina and resides in York County.

3. Defendant Allstate Insurance Company is a corporation authorized to engage in the business of insurance in the State of North Carolina. Under N.C. Gen. Stat. § 58-16-30, Allstate's registered agent for service of process is the North Carolina Commissioner of Insurance, Mike Causey, who is located at 325 N. Salisbury Street, Raleigh, North Carolina 27603.

4. During all relevant times alleged herein, Jennifer McDonald and/or other unnamed agents and/or employees of Defendant Allstate Insurance Company, were acting within the course and scope of their employment and/or agency so that their actions, inactions, deeds, misdeeds, and negligence is and should be imputed to Allstate Insurance Company under the law of agency and the doctrines of *respondeat superior*, ratification, and/or condonation.

1

## JURISDICTION & VENUE

5. As a court of general jurisdiction, this Court has subject matter jurisdiction over Plaintiffs' claims for relief because they founded upon the laws of North Carolina.

6. The amount in controversy is in excess of $25,000, and pursuant to N.C. Gen. Stat. § 7A-243, the Superior Court is the proper division for the trial of this case.

7. This Court may exercise personal jurisdiction over the Defendant Allstate Insurance Company because it is authorized to conduct business in this State, and the conduct for which Plaintiffs seek relief occurred in North Carolina.

8. Venue is appropriate in Gaston County Superior Court because Gaston is the county wherein the subject property lies and is the county most convenient for witnesses that may be called to the trial of this action.

## BACKGROUND FACTS

9. During all relevant times herein, Mickey Crowe and Mary Crowe provided financing for the purchase of a mobile home and parcel of real property located at 1606 Atkins Place, Gastonia, North Carolina (hereinafter "Atkins Place").

10. The deed of trust evidencing the Plaintiffs' security interest in the Atkins Place property was recorded in Book 3709, page 549 of the Gaston County Registry.

11. On or about 5 May 2010, Mary Anne Harvell executed a deed for the Atkins Property whereby she agreed to assume and pay in full the balance of Plaintiffs' note and deed of trust. This deed was recorded in Book 4513, page 2002 of the Gaston County Registry.

12. In August of 2014, Mary Harvell applied for insurance to cover her Atkins Place Property. Defendant Allstate Insurance Company accepted Harvell's application, charged and accepted her premiums, and issued coverage for her home.

2

13. In policy number 968810428, Mary Harvell was a named insured. Defendant Allstate Insurance Company promised insurance coverage for Harvell's Atkins Place property, loss of its use, and her personal property.

14. In policy number 968810428, Mickey Crowe and Mary Crowe were identified as lien holders or mortgagees of the Atkins Place property. The policy was purchased, in part, for the benefit and protection of Plaintiffs' security interest in the Atkins property as evidenced by Plaintiffs' note and deed of trust, and the assumption of the mortgage by Mary Harvell.

15. Among other things, the policy states:

> *COVERAGE A—DWELLING*
>
> We cover:

a) the mobilehome on the residence premises shown in the Declarations used principally as a private residence . . .

> *COVERAGE C – PERSONAL PROPERTY*
>
> We cover personal property:

a) owned or used by an insured while it is anywhere in the world.
b) owned by others while it is on the part of the residence premises occupied by an insured. This is at your option.
c) Owned by a guest or a residence employee while it is in any residence occupied by an insured. This is at your option . . .

> *COVERAGE D—LOSS OF USE*

1. *Additional Living Expense.*

> If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living . . .

> *SECTION I—ADDITIONAL COVERAGES*

1. Debris Removal

We will pay the reasonable expense incurred by you in the removal of debris of covered property . . .

*SECTION I – PERILS INSURED AGAINST*

We insure for direct loss to the property described in Coverages A, B, and C caused by:

1. Fire or lightning . . .

   14. Loss Payable Clause.

   The word "Lienholder" includes a trustee. If a lienholder is named in this policy, a loss payable under Coverage A, B, or C will be paid to the lienholder and you, as interests appear. If more than one lienholder is named, the order of payment will be the same as the order or precedence of liens . . .

16. A true and accurate copy of the applicable insurance policy is attached as Exhibit A.

17. On or about 22 December 2017, the Atkins Place property suffered a direct loss caused by fire. Mary Anne Harvell submitted a claim for insurance benefits under the policy.

18. Following the loss of her home, Harvell complied with all of the policy conditions regarding her coverage. Among other things, Harvell immediately notified Allstate Insurance Company of the loss. Harvell provided an extensive and detailed recorded statement. Harvell visited the property with Allstate Insurance Company's adjusters and investigators. Harvell provided an inventory of her personal property.

19. On January 24, 2018 Ms. Harvell submitted a proof of loss statement.

20. Despite having complied fully with the conditions of the policy, Defendant refused to make a determination regarding Ms. Harvell's coverage despite having all the information necessary to resolve the claim as of February of 2018.

21. On 8 May 2018, Harvell appeared for an examination under oath. She produced all documents that were reasonably within her possession and control as requested by

4

Defendant, despite such documents having no relevance to her insurance claim.

22. On 20 July 2018, Defendant denied Ms. Harvell's claim for insurance benefits. Defendant did not provide any factual basis for the denial. Rather, Defendant accused Ms. Harvell of committing fraud.

23. Defendant never complied with the terms of the applicable policy with respect to Plaintiffs' rights as lienholders.

24. Defendant never offered Plaintiffs any of the benefits identified by the policy prior to the filing of this lawsuit.

25. Plaintiffs are entitled to the full benefits provided by the policy, up to and including the limits of liability in the amount of $56,000.00.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

26. Plaintiffs incorporate by reference and re-allege each of the prior allegations contained herein.

27. There exists a real and actual controversy between the Plaintiffs and Defendant as to the extent and existence of insurance coverage for the Atkins Place Property.

28. Plaintiffs contend that as a result of the statutory and case law governing the formation and enforcement of insurance contracts, Defendant is obligated to provide the full benefits of insurance to the Plaintiffs, including but not limited to dwelling coverage in the amount of $56,000 and all other benefits identified in the applicable policy.

29. Plaintiffs have been damaged in excess of $25,000.00.

30. Plaintiffs seek all remedies, including a declaratory judgment pursuant to Rule 57 of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 1-253 *et seq*.

## SECOND CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices)

31. Plaintiffs incorporate by reference and re-allege each of the prior allegations contained herein.

32. The business of insurance, which includes the selling of policies of insurance to consumers, constitutes a "trade" or "commerce" as those terms are defined and utilized by Chapter 75 of the North Carolina General Statutes and related case law.

33. Pursuant to N.C. Gen. Stat. § 58-63-15 *et seq*, it is the public policy of the State of North Carolina that insurance companies, like the Defendant, refrain from unfair and deceptive trade practices or acts.

34. The Defendant has committed an immoral, unethical, unfair and deceptive trade practice in violation of N.C. Gen. Stat. §§ 58-63-15(11) and 75-1.1 *et seq* by:

    a. Misrepresenting pertinent facts or insurance policy provisions related to coverage;

    b. Intentionally, recklessly, and maliciously refusing to provide the benefits of insurance when it had all of the necessary facts to make a coverage determination as of February 2018;

    c. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the applicable policy;

    d. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the applicable policy;

    e. Failing to affirm or deny coverage of the claims within a reasonable time after the proof-of-loss statement was completed;

    f. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim;

6

g. Refusing to provide coverage without conducting a reasonable investigation based upon all available information;

h. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of a claim where its liability had become reasonably clear;

i. Compelling the mortgagees to hire an attorney;

j. Compelling the mortgagees to institute litigation to recover benefits due under the policy;

k. Failing to ascertain the true facts underlying Plaintiffs' claim;

l. Intentionally refusing to provide coverage for a valid claim in the absence of an honest mistake or disagreement;

m. Consciously, intentionally, and recklessly disregarding the rights to the Plaintiffs under the terms of the insurance contract when Allstate had already received the benefits of the bargain; or

n. Such other conduct as may be demonstrated at a trial of this matter.

35. The above-identified acts by the Defendant occurred with such frequency as to indicate a general business practice.

36. As a direct and proximate cause of Defendant's unfair and deceptive trade practices, the Plaintiffs have suffered damages including the loss of insurance benefits. Therefore, the Plaintiffs have suffered damages in excess of $25,000.00

37. Plaintiff is entitled to treble damages and an award of attorney's fees as provided by N.C. Gen. Stat. §§ 75-16 and 75-16.1.

**WHEREFORE**, the Plaintiffs demand judgment from the Defendant as follows:

1. For a declaratory judgment pursuant to Rule 57 of the North Carolina Rules of Civil

7

Procedure and N.C. Gen. Stat. § 1-253 *et seq*.

2. For compensatory damages in excess of $25,000.00 as to each claim for relief;

3. For treble damages as to the claim for unfair and deceptive trade practices pursuant to

   N.C. Gen. Stat. § 75-16;

4. For attorneys fees as provided by law;

5. For a trial by jury on all the issues;

6. For all costs incurred in this action, including pre-judgment and post judgement interest;

7. For such other and further relief as the Court deems just and equitable.

This is the 4 day of March 2020.

Thomas D. Bumgardner
Attorney for the Plaintiffs
Law Office of Thomas D. Bumgardner, PLLC
13850 Ballantyne Corporate Place, Suite 500
Charlotte, North Carolina 28277
Phone: (704)-887-4981
Fax: (704)-887-4981
Email: thomas@ballantynelegal.com

8


You're in good hands.

Claim# ___0486255813___

PLAINTIFF'S
EXHIBIT
4
FENGAD 800-631-6989

To Whom It May Concern:

I, ___Jeremy LeBeau___, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of ___12/22/2017___. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this ___8th___ day of ___March___ 2018, before me personally

appeared *Jeremy LeBeau* to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.



PATRICIA TORRES
Notary Public, State of Texas
Comm. Expires 10-31-2021
Notary ID 129611687

_____
Notary Public

G52-3



**Allstate.**
You're in good hands.

*Randy Walker Agency*
*3801 S New Hope Road*
*Gastonia NC 28056*

Information as of August 2, 2017

Policyholder(s)                    Page **1** of 2
**Mary Harvell**
Policy number
968 810 428

Your Allstate agency is
**Randy Walker Agency**
(704) 823-1919
RandyWalker2@allstate.com

Բ||||||Ի||լ||լ||լ||||Ի||||Ի||Ի||||||Ի||||||||||||Ի||||||Ի||Ի||լ||||
MARY HARVELL
1606 ATKINS PL
GASTONIA NC 28056-8587

## Thank You for Being a Loyal Allstate Customer—We're Happy to Have You with Us!

Here's your Comprehensive Mobilehome insurance renewal offer for the next 12 months. We've also included a guide to what's in this package and answers to some common questions.

### Renewing your policy is easy

Keep an eye out for your bill, which should arrive in a couple of weeks. Just send your payment by the due date on your bill.

If you're enrolled in the Allstate Easy Pay Plan, you won't receive a bill—we'll send you a statement with your payment withdrawal schedule.

You also won't receive a bill if a mortgage company or lienholder pays your insurance premium for you.

### How to contact us

Give your Allstate Agent a call at (704) 823-1919 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

Thomas J. Wilson
President, Allstate Insurance Company

RP378-4



## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. **Next steps:** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. **Next steps:** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

## A guide to your renewal package

 

**Policy Declarations\***
The Policy Declarations lists policy details, such as your property details and coverages.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

\* ***To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.***

010 032 032
1708025300598
11000005300598001QNC000170802224814001038001004008364

# Renewal Comprehensive Mobilehome Declarations



You're in good hands.

Your policy effective date is September 16, 2017

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for Mobilehome Coverage | $450.00 |
| **Total** | **$450.00** |

*Your bill will be mailed separately. Before making a payment, please refer to your latest bill, which includes payment options and installment fee information. If you do not pay in full, you will be charged an installment fee(s).*

## Discount (included in your total premium)

| | |
|---|---|
| 55 and Retired | 10% |

## Location of property insured

1606 Atkins Pl, Gastonia, NC 28056-8587

## Insured mobilehome

| Manufacturer | Serial No. | Year |
|---|---|---|
| Fleetwood | 1234 | 2000 |

## Mortgagee

MICKEY AND MARY CROWE
4412 River Oaks Rd, Lake Wylie, SC 29710-7026
Loan number: 000001

## Additional Interested Party

None

---

Information as of August 2, 2017

## Summary

Named Insured(s)
**Mary Harvell**
Mailing address
**1606 Atkins Pl**
**Gastonia NC 28056-8587**

Policy number
**968 810 428**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **September 16, 2017** at 12:01 A.M. standard time, with no fixed date of expiration

Premium period
Beginning **September 16, 2017** through **September 16, 2018** at 12:01 A.M. standard time

Your Allstate agency is
**Randy Walker Agency**
3801 S New Hope Road
Gastonia NC 28056
(704) 823-1919
RandyWalker2@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling | $56,000 | • $1,000 All peril |

NCC0328BD



| Other Structures | $5,600 | • $1,000 All peril |
| Personal Property | $28,000 | • $1,000 All peril |
| Loss of Use | $5,600 | |
| Personal Liability | $100,000 each occurrence | |
| Medical Payments To Others | $1,000 each person $25,000 each accident | |
| Fire Department Charges | **Not purchased*** | |
| Business Pursuits | **Not purchased*** | |
| Additional Residence Rented to Others | **Not purchased*** | |
| Lienholder's Single Interest | **Not purchased*** | |
| Additional Premises | **Not purchased*** | |
| Theft Coverage Extension | **Not purchased*** | |

*** This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your Comprehensive Mobilehome policy consists of the Policy Declarations and the following documents. Please keep them together.

• Mobilehome Policy – U10009-1

• MH(F)–300 (03 09) Special Provisions – AP56-1

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ Please note: This is not a request for payment. Your bill will be mailed separately.

**Allstate Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

*Thomas J. Wilson*
Thomas J. Wilson
President

*Susan L. Lees*
Susan L. Lees
Secretary

NC0328RD

010 032 032
1708025300598
1100000530059801N0NC00017080222481400110380020040008364


## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

### You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

\* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

X73168

## Additional Protection for Your Most Valuable Possessions

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

*   No deductibles to meet
*   Coverage for lost or damaged items
*   Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

*   Jewelry (including wedding rings and precious or semi-precious stones)
*   Furs
*   Cameras (digital, still, movie, video and related equipment)
*   Silverware and antiques (including furniture)
*   Musical instruments
*   Collections (stamps, coins, music)
*   Fine art works (including paintings, etchings, vases and sculptures)
*   Manuscripts or books
*   Home-office equipment (laptop, computer, audio/visual)
*   Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.



Important notices
Policy number: | 968 810 428 |
Policy effective date: September 16, 2017

To learn more about SPP coverage, or if you have any questions
about your insurance policy in general, contact your Allstate
representative, or visit us at allstate.com.

**X73169**

# Privacy Statement

Policy number: **968 810 428**
Policy effective date: September 16, 2017



You're in good hands.

Thank you for choosing Allstate. We value you, respect your privacy and work hard to protect your personal information.

This statement is provided on behalf of Allstate Insurance Company and the affiliates ("Allstate") listed at the end of this notice. We would like to explain how we collect, use and share the information we obtain about you in the course of doing business.

## Our Privacy Assurance

- We do <u>not</u> sell your personal or medical information to anyone.
- We do <u>not</u> share your information with non-affiliate companies that would use it to contact you about their own products and services, unless permitted pursuant to a joint marketing agreement.
- We <u>require</u> persons or organizations that represent or assist us in servicing your policy and claims to keep your information confidential.
- We <u>require</u> our employees to protect your personal information and keep it confidential.

As you can see, protecting your personal information is important to us. In addition to the practices described above, we use a variety of physical, technical and administrative security measures that help to safeguard your information. For Social Security Numbers (SSN), this includes restricting access to our employees, agents and others who use your SSN only as permitted by law: to comply with the law, to provide you with products and services, and to handle your claims. Also, our employees' and agents' access to and use of your SSN are limited by the law, our policies and standards, and our written agreements.

Our privacy practices continue to apply to your information even if you cease to be an Allstate customer.

## What Personal Information Do We Have and Where Do We Get It

We gather personal information from you and from outside sources for business purposes. Some examples of the information we collect from you may include your name, phone number, home and e-mail addresses, driver's license number, Social Security Number, marital status, family member information and healthcare information. Also, we maintain records that include, but are not limited to, policy coverages, premiums, and payment history. We also collect information from outside sources including, but not limited to, insurance support organizations that assemble or collect information about individuals for the purpose of providing to insurance companies. This information may include, but is not limited to,

your driving record, claims history, medical information and credit information.

In addition, Allstate and its business partners gather information through Internet activity, which may include, for example, your operating system, links you used to visit allstate.com, web pages you viewed while visiting our site or applications, Internet Protocol (IP) addresses, and cookies. We use cookies, analytics and other technologies to help:

- Evaluate our marketing campaigns
- Analyze how customers use our website and applications
- Develop new services
- Know how many visitors have seen or clicked on our ads

Also, our business partners assist us with monitoring information including, but not limited to, IP addresses, domain names and browser data, which can help us to better understand how visitors use allstate.com.

## How We Use and Share Your Personal Information

In the course of normal business activities, we use and share your personal information. We may provide your information to persons or organizations within and outside of Allstate. This would be done as required or permitted by law. For example, we may do this to:

- Fulfill a transaction you requested or service your policy
- Market our products
- Handle your claim
- Prevent fraud
- Comply with requests from regulatory and law enforcement authorities
- Participate in insurance support organizations

The persons or organizations with whom we may share your personal information may include, among others:

- Your agent, broker or Allstate-affiliated companies
- Companies that perform services, such as marketing, credit card processing, and performing communication services on our behalf
- Business partners that assist us with tracking how visitors use allstate.com
- Other financial institutions with whom we have a joint marketing agreement
- Other insurance companies that play a role in an insurance transaction with you
- Independent claims adjusters
- A business or businesses that conduct actuarial or research studies
- Those who request information pursuant to a subpoena or court order
- Repair shops and recommended claims vendors

## The Internet and Your Information Security



We use cookies, analytics and other technologies to help us provide users with better service and a more customized web experience. Additionally, our business partners use tracking services, analytics and other technologies to monitor visits to allstate.com. The website may also use Web beacons (also called "clear GIFs" or "pixel tags") in conjunction with cookies. If you prefer, you can choose to not accept cookies by changing the settings on your web browser. Also, if you would like to learn about how we gather and protect your information over the Internet, please see our online privacy statement located at the bottom of the allstate.com homepage.

To learn more, the allstate.com Privacy Statement provides information relating to your use of the website. This includes, for example, information regarding:
1) How we collect information such as IP address (the number assigned to your computer when you use the Internet), browser and platform types, domain names, access times, referral data, and your activity while using our site;
2) Who should use our website;
3) The security of information over the Internet; and
4) Links and co-branded sites.

## How You Can Review and Correct Your Personal Information

You can request to review your personal information contained in our records at any time. To do this, please send a letter to the address below requesting to see your information for the previous two years. If you believe that our information is incomplete or inaccurate, you can request that we correct it. Please note we may not be able to provide information relating to investigations, claims, litigation, and other matters. We will be happy to make corrections whenever possible.

Please send requests to:
Allstate Insurance Company Customer Privacy Inquiries
PO Box 660598
Dallas, TX 75266-0598

## Your Preference for Sharing Personal Information

We would like to share your personal information with one or more Allstate affiliates in order to make you aware of different products, services and offers they can provide. However, you can request that Allstate and its affiliate companies not share your personal information with our affiliates for marketing products and services.

To request that we not allow other Allstate affiliates to use your personal information to market their products and services, you can contact us by calling 1-800-856-2518 twenty-four hours a day, seven days a week. Please keep in mind that it may take up to four weeks to process your request.

If you previously contacted us and asked us not to allow other Allstate affiliates to use your personal information, your previous choice still applies and you do not need to contact us again. If you would like to change your previous choice please call the number above at any time.

## We Appreciate Your Business

Thank you for choosing Allstate. We understand your concerns about privacy and confidentiality, and we hope this notice has been helpful to you. We value our relationship with you and look forward to keeping you in Good Hands®.

If you have questions or would like more information, please don't hesitate to contact your Allstate agent or call the Allstate Customer Information Center at 1-800-ALLSTATE.

We reserve the right to change our Privacy practices, procedures, and terms.

Allstate Insurance Company

Allstate entities on which behalf this notice is provided and amongst which information may be shared:

The Allstate family of companies, LSA Securities, Deerbrook General Agency, Inc., Deerbrook Insurance Company, North Light Specialty Insurance Company, Northbrook Indemnity Company.

Please Note: Allstate affiliates American Heritage Life Insurance Company, Castle Key Insurance Company and Castle Key Indemnity Company participate in information sharing with the affiliates listed above, but have a separate privacy notice for their customers.

(ed. 10/2015)

**X73180v6**

010 032 032
1708025300598
110000053005598010NCO0017080222484400103800400400B864

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Special Provisions — AP56-1

*Section I — Conditions*

### 2. Your Duties After Loss

The following is added to the end of Paragraph **e)**:

However, if a state of disaster is proclaimed or declared for the State of North Carolina or for an area within the state in accordance with North Carolina law and the covered property that has sustained loss is located within the geographic area designated in the disaster proclamation or declaration, this 60-day period shall not commence until the expiration of the disaster proclamation or declaration, including all renewals of the proclamation or 45 days, whichever is later.

*Section II — Exclusions*

Under item **1. Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others,** the following exclusion is added to all Forms:

g) arising out of sexual molestation, corporal punishment or physical or mental abuse.

*Section II — Additional Coverages*

Under item **1. Claim Expenses** the following paragraph is added:

e) prejudgment interest awarded against any insured on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

*Section II — Conditions*

### 3. Duties After Loss

The following is added to the end of Paragraph **d)**:

However, if a state of disaster is proclaimed or declared for the State of North Carolina or for an area within the state in accordance with North Carolina law and the covered property that has sustained loss is located within the geographic area designated in the disaster proclamation or declaration, this 60-day period shall not commence until the expiration of the disaster proclamation or declaration, including all renewals of the proclamation or 45 days, whichever is later.

All other provisions of this policy apply.

Copyright, North Carolina Rate Bureau, 2008

MH(F) 300 (03 09)

# Allstate
# Mobilehome
# Policy

Policy:                    Effective:

Issued to:

This policy is a legal contract between you and us.

The new Property Policy has been:

- designed for your easy reference;
- simplified, to make it more understandable; and
- arranged, to better display the available coverages.

READ YOUR POLICY CAREFULLY

Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company—Home Office: Northbrook, Illinois 60062

U10009-1

# YOUR MOBILEHOME POLICY QUICK REFERENCE

**Declarations Page**
Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible

|  | Beginning On Page |
|---|---|
| **General** | |
| Agreement | 01 |
| Definitions | 01 |
| **Section I Your Property** | |
| **Coverages** | |
| Property Coverages | 03 |
| Loss of Use | 04 |
| Additional Coverages | 04 |
| Debris Removal | 04 |
| Trees, Shrubs and Plants | 04 |
| Perils Insured Against | 05 |
| Exclusions | 07 |
| Conditions | 07 |
| Insurable Interest | 07 |
| Duties After Loss — How to File a Claim | 07 |
| Loss Settlement | 08 |
| **Section II Your Liability** | |
| **Coverages** | 10 |
| Personal Liability | 10 |
| Medical Payments to Others | 10 |
| Exclusions | 10 |

|  | Beginning On Page |
|---|---|
| Additional Coverages | 11 |
| Claim Expenses | 11 |
| First Aid Expenses | 12 |
| Damages to Property of Others | 12 |
| Conditions | 12 |
| Limit of Liability | 12 |
| Duties After Loss — How to File a Claim | 12 |
| **Section I and Section II** | 13 |
| Conditions | 13 |
| Policy Period | 13 |
| Cancellation | 13 |
| Non-Renewal | 14 |

**ALLSTATE INSURANCE COMPANY**
A Stock Company • Home Office • Northbrook, Illinois

# General

## AGREEMENT
We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS
Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

2. "business" includes trade, profession or occupation.

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 23 of 40

3. "insured" means you and the following residents of your household:
   a) your relatives;
   b) any other person under the age of 21 who is in the care of any person named above.

   Under Section II, "insured" also means:
   c) with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b. A person or organization using or having custody of these animals or watercraft in the course of any **business**, or without permission of the owner is not an **insured**;
   d) with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of any person included in 3a or 3b.

4. "**insured location**" means:
   a) the **residence premises**;
   b) the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;
   c) any premises used by you in connection with the premises included in 4a or 4b;
   d) any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;
   e) vacant land owned by or rented to any **insured**. This does not include farm land;
   f) land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**;
   g) individual or family cemetery plots or burial vaults of any **insured**;
   h) any part of any premises occasionally rented to any **insured** for other than **business** purposes;

5. "**motor vehicle**" means:
   a) a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**.
   b) a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 5a is not a **motor vehicle**;
   c) a motorized golf cart, snowmobile or other motorized land vehicle owned by any **insured** and designed for recreational use off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;
   d) any vehicle including a mobilehome described in the Declarations being towed by or carried on a vehicle included in 5a., 5b. or 5c.

6. "**property damage**" means physical injury to or destruction of tangible property. This includes loss of use of the property.

7. "**residence employee**" means an employee of any **insured** who performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the **business** of any **insured**.

8. "**residence premises**" means the mobilehome and other structures located on land owned or leased by you where you reside and which is shown as the "**residence premises**" in the Declarations.

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 24 of 40

# Section I Your Property

## COVERAGES

### COVERAGE A — DWELLING

We cover:

a) the mobilehome on the **residence premises** shown in the Declarations used principally as a private residence. Included are all parts and accessories built into the structure and utility tanks attached.

b) appliances, furniture and equipment furnished by the maker or dealer. We will also include replacements of these.

c) materials and supplies located on or next to the **residence premises**. They must be used in the construction or repair of the mobilehome.

### COVERAGE B — OTHER STRUCTURES

We cover:

a) other structures, additions and equipment attached to or appurtenant to the mobilehome. They must not be used in whole or in part for **business** purposes.

b) materials and supplies located on or next to the **residence premises**. They must be used in the construction or repair of these other structures or additions.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property:

a) owned or used by an **insured** while it is anywhere in the world.

b) owned by others while it is on the part of the **residence premises** occupied by an **insured**. This is at your option.

c) owned by a guest or a **residence employee** while it is in any residence occupied by an **insured**. This is at your option.

Our limit of liability for personal property while off the **residence premises** is 10% of the amount specified for Coverage C or $300.00, whichever is greater.

If you move to another permanent residence, we will insure your personal property at each location on a pro rata basis. This coverage applies up to 30 days from the date you begin to move. It does not extend beyond the expiration date of this policy.

**Special Limits of Liability.**
These limits do not increase the Coverage C limit of liability. The special limit for each following numbered category is the total limit for each occurrence for all property in that numbered category.

1. $100 on money, bullion, bank notes, coins and medals;

2. $500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps;

3. $500 for loss by theft of jewelry, watches, platinum, furs, precious and semi-precious stones;

4. $500 for loss by theft of silverware;

5. $500 for loss of fine arts;

6. $500 on business property while on premises described in the Declarations.

Property not covered:

1. property covered under Coverage A or B;

2. animals, birds or fish;

3. motorized land vehicle, their equipment and accessories. Those not licensed for road use, used to service an insured residence are covered;

4. property which may be operated from a motor vehicle power supply:
   a) Equipment including accessories and antennas for the recording, reproduction, receiving or transmitting of sound.
   b) Tapes, records or other devices for use with the above equipment. This applies only while such property is in or on a motor vehicle.

5. aircraft and parts;

6. watercraft, their furnishings, equipment, and outboard motors;

7. trailers, licensed or not;

Copyright, North Carolina Rate Bureau, 1980

8. property of roomers, boarders and other tenants. Property of roomers and boarders related to an **insured** is covered;
9. **business** property in storage or held as a sample or for sale or delivery after sale;
10. property contained in an apartment regularly rented or held for rental to others by an **insured**;
11. property rented or held for rental to others away from the **residence premises**;
12. **business** property away from the **residence premises**;
13. articles separately described and specifically insured in this or other insurance.

## COVERAGE D — LOSS OF USE

The limit of liability for Coverage D is the total limit for all the following coverages:

1. **Additional Living Expense.**
   If a loss covered under this Section makes the **residence premises** uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. Payment shall be for the shortest time required:
   a) to repair or replace the premises; or
   b) if you permanently relocate, the shortest time required for your household to settle elsewhere; or
   c) the period of time between the date of loss and thirty days after the date we offer a cash settlement based either on a repair estimate or the actual cash value of the mobilehome.

2. **Prohibited Use.**
   If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a Peril Insured Against in this policy we cover any resulting Additional Living Expense for a period not exceeding two weeks during which use is prohibited. This period of time is not limited by the expiration of this policy. We do not cover loss or expense due to

cancellation of a lease or agreement. No deductible applies to this coverage.

## SECTION I — ADDITIONAL COVERAGES

1. **Debris Removal.**
   We will pay the reasonable expense incurred by you in the removal of debris of covered property. Loss must be due to a covered peril. Debris removal expense is included in the limit of liability applying to the damaged property.

2. **Reasonable Repairs.**
   We will pay the reasonable cost incurred by you for necessary repairs made solely to protect covered property from further damage. The peril causing the loss must be covered. This coverage does not increase the limit of liability applying to the property being repaired.

3. **Trees, shrubs and other plants.**
   We cover trees, shrubs, plants or lawns on the **residence premises** owned by the **insured**. Loss must be caused by fire or lightning, explosives, riot or civil commotion, malicious mischief or vandalism, or aircraft. The limit of liability for this coverage shall not exceed $300 in the aggregate. It shall not be more than $100 for one tree or lawn or $50 for one plant or shrub including the cost of debris removal.

4. **Fire Department Service Charge.**
   We will pay up to $100 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response. This coverage is additional insurance. No deductible applies to this coverage.

Copyright, North Carolina Rate Bureau, 1980

5. **Property Removed.**
   a) Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed is covered for direct loss from any cause. This coverage does not change the limit of liability applying to the property being removed.
   b) If, at anytime, the mobilehome is endangered by a Peril Insured Against and removal is necessary to avoid damage, we will pay the reasonable expense incurred by you, not to exceed $100, for the removal and the return. No deductible applies to this coverage.

## SECTION I — PERILS INSURED AGAINST

We insure for direct loss to the property described in Coverages A, B and C caused by:

1. Fire or lightning.

2. Windstorm or hail.
   This peril does not include loss to the interior of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening. This peril does not include loss caused directly or indirectly by frost, cold weather or ice other than hail, snow or weather or ice other than hail, snow or sleet, all whether wind driven or not.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles, excluding loss:
   a) by vehicles owned or operated by an **insured**, tenant, or transporter of the mobile home.

   b) while the insured property is on any part of a vehicular right-of-way.

7. Smoke, meaning sudden and accidental damage from smoke.
   This peril does not include loss caused by smoke from farming or industrial operations.

8. Vandalism or malicious mischief. This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. Theft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen. Property placed for safekeeping in any bank, trust or safe deposit company, public warehouse or occupied dwelling not owned or rented to an **insured** shall be considered on the **residence premises**.
   This peril does not include loss caused by theft:
   a) committed by an **insured**;
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or
   c) from part of a **residence premises** rented by an **insured** to other than an **insured**;
      1) caused by a tenant, members of the tenant's household, or the tenant's employees;
      2) of money, bank notes, bullion, gold, silver, silverware, pewterware, platinum, coins and medals;
      3) of securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, or stamps;
      4) of jewelry, watches, furs, precious and semi-precious stones.
   This peril does not include loss caused by theft that occurs away from the **residence premises** of:

Copyright, North Carolina Rate Bureau, 1980

a) property while at any other residence owned, rented to, or occupied by an **insured** except while any **insured** is temporarily residing there;

b) unattended property in or on a motorized land vehicle or trailer, other than a public conveyance. Coverage applies if there is forcible entry into the vehicle while all its doors, windows and other openings are closed and locked and there are visible marks of the forcible entry; or the vehicle is stolen and not recovered within 30 days. Property is not unattended when the **insured** has entrusted the keys of the vehicle to a custodian.

c) unattended property in or on any watercraft unless the loss results from forcible entry into a securely locked compartment and there are visible marks of the forcible entry.

10. Breakage of glass or safety glazing material which is part of a building, storm door or storm window. This peril does not include loss on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

11. Falling objects.
This peril does not include loss to the interior of a building or property contained in the building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself, outdoor equipment, awnings, and fences, is not included.

12. Weight of ice, snow, or sleet which causes damage to a building or property contained in the building.
This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf, dock, or outdoor equipment.

13. Collapse of a building or any part of a building.

This peril does not include loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock.
Coverage applies if the loss is a direct result of the collapse of a building. Collapse does not include settling, cracking, shrinking, bulging or expansion.

14. Accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance. We also pay for tearing out and replacing part of the building on the **residence premises** necessary to repair the system or appliance from which the water or steam escaped.
This peril does not include loss:
a) to a building caused by continuous or repeated seepage or leakage which occurs over a period of weeks, months or years;
b) on the **residence premises**, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;
c) to the system or appliance from which the water or steam escaped;
d) caused by or resulting from freezing.

15. Sudden and accidental tearing apart, cracking, burning or bulging of: a steam or hot water heating system; an air conditioning system; or an appliance for heating water.
This peril does not cover loss caused by or resulting from freezing.

16. Freezing of a plumbing, heating or air conditioning system or of a household appliance.
This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed. Coverage applies if you have used reasonable care to:
a) maintain heat in the building; or

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 28 of 40

b) shut off the water supply and drain the system and appliances of water.

17. Sudden and accidental damage from artificially generated electrical current. This peril does not include loss to a tube, transistor or similar electronic components.

18. Flood or rising water.

## SECTION I — EXCLUSIONS

We do not cover loss resulting directly or indirectly from:

1. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

2. Earth Movement. Direct loss by fire, explosion, theft, or breakage of glass or safety glazing materials resulting from earth movement is covered.

3. Power Interruption, meaning the interruption of power or other utility service if the interruption takes place away from the **residence premises**. If a Peril Insured Against ensues on the **residence premises**, we will pay only for loss caused by the ensuing peril.

4. Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

5. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

6. Nuclear Hazard, to the extent set forth in the Nuclear Hazard Clause of Section I — Conditions.

## SECTION I — CONDITIONS

1. **Insurable Interest and Limit of Liability.**
Even if more than one person has an insurable interest in the property covered, we shall not be liable:
   a) to the **insured** for an amount greater than the **insured's** interest; nor
   b) for more than the applicable limit of liability.

2. **Your Duties After Loss.**
In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
   a) give immediate notice to us or our agent, and in case of theft also to the police;
   b) protect the property from further damage, made reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;
   c) prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
   d) as often as we reasonably require:
      1) exhibit the damaged property;
      2) provide us with records and documents we request and permit us to make copies; and
      3) submit to examination under oath and subscribe the same.
   e) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
      1) the time and cause of loss;
      2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 29 of 40

3) other insurance which may cover the loss;
4) changes in title or occupancy of the property during the term of the policy;
5) specifications of any damaged building and detailed estimates for repair of the damage;
6) an inventory of damaged personal property described in 2c;
7) receipts for additional living expenses incurred and records supporting the fair rental value loss;
8) evidence or affidavit supporting a claim under the Credit Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.**
Covered property losses are settled at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace.

4. **Loss to a Pair or Set.**
In case of loss to a pair or set we may elect to:
a) repair or replace any part to restore the pair or set to its value before the loss; or
b) pay the difference between actual cash value of the property before and after the loss.
c) pay in any loss involving part of a series of pieces or panels:
1) the reasonable cost of repairing or replacing the damaged part to match the remainder as closely as possible; or
2) the reasonable cost of providing an acceptable decorative effect or utilization as circumstances may warrant. However, we do not guarantee the availability of replacements, or in the event of damage to a part, be liable for the value of or to repair or replace the entire series of pieces or panels.

5. **Glass Replacement.**
Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.**
If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss.

If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.**
If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.**
No action shall be brought unless there has been compliance with the policy provisions and the action is started within three years after the occurrence causing loss or damage.

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 30 of 40

**9. Our Option.**
If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

**10. Loss Payment.**
We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and
a) reach agreement with you; or
b) there is an entry of a final judgement; or
c) there is a filing of an appraisal award with us.

**11. Abandonment of Property.**
We need not accept any property abandoned by any insured.

**12. No Benefit to Bailee.**
We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**13. Nuclear Hazard Clause.**
a) "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
b) Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.
c) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**14. Loss Payable Clause.**
The word "Lienholder" includes trustee. If a lienholder is named in this policy, a loss payable under Coverage A, B, or C will be paid to the lienholder and you, as interests appear. If more than one lienholder is named, the order of payment will be the same as the order or precedence of the liens.

If we deny your claim, that denial will not apply to a valid claim of the lienholder, if the lienholder:
a) notifies us of a change in ownership, occupancy, or substantial change in risk of which the lienholder is aware.
b) pays any premium due under this policy on demand, if you have neglected to pay the premium.
c) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us, and Loss Payment apply to the lienholder.
If we cancel or non-renew the policy, the lienholder will be notified at least 10 days before the cancellation or non-renewal takes effect.
If we pay the lienholder for a loss and deny payment to you:
a) we are subrogated to all the rights of the lienholder granted under the lien on the property; or
b) at our option, we may pay to the lienholder the whole principal on the lien plus accrued interest. In the event, we will receive a full assignment and transfer of the lien and all securities held as collateral to the lien.
Subrogation will not impair the right of the lienholder to recover the full amount of the lienholder's claim.

Copyright, North Carolina Rate Bureau, 1980

## Section I Your Liability

### SECTION II — LIABILITY COVERAGE

### COVERAGE E — PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

a) pay up to our limit of liability for the damages for which the **insured** is legally liable; and

b) provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within one year from the date of an accident causing **bodily injury**. Medical expenses mean reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or any regular residents of your household other than **residence employees**. As to others, this coverage applies only:

a) to a person on the **insured location** with the permission of any **insured**; or

b) to a person off the **insured location**, if the **bodily injury**:

1) arises out of a condition in the **insured location** or the ways immediately adjoining;

2) is caused by the activities of any **insured**;

3) is caused by a **residence employee** in the course of the **residence employee's** employment by any **insured**; or

4) is caused by an animal owned by or in the care of any **insured**.

### SECTION II — EXCLUSIONS

1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:

a) which is expected or intended by the **insured**;

b) arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**.

This exclusion does not apply to:

1) activities which are ordinarily incident to non-**business** pursuits; or

2) the rental or holding for rental of a residence of yours:

a) on an occasional basis for the exclusive use as a residence;

b) in part, unless intended for use as a residence by more than two roomers or boarders; or

c) in part, as an office, school, studio or private garage;

c) arising out of the rendering or failing to render professional services;

d) arising out of any premises owned or rented to any **insured** which is not an **insured location**;

e) arising out of the ownership, maintenance, use, loading or unloading of:

1) an aircraft;

2) a **motor vehicle** owned or operated by, or rented or loaned to any **insured**; or

3) a watercraft:

a) owned by or rented to any **insured** if the watercraft has inboard or inboard-outdrive motor power of more than 50 horsepower or is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length; or

b) powered by one or more outboard motors with more than 25 total horsepower;

Copyright, North Carolina Rate Bureau, 1980

owned by any **insured** at the inception of this policy. If **you** report in writing to **us** within 45 day after acquisition, an intention to insure any outboard motors acquired prior to the policy period, coverage will apply.

f)  caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

Exclusion e(3) does not apply while the watercraft is stored and exclusions d and e do not apply to **bodily injury** to any **residence employee** arising out of and in the course of the **residence employee's** employment by any **insured**.

2.  **Coverage E — Personal Liability**, does not apply to:

a)  liability assumed under any unwritten contract or agreement or by contract or agreement in connection with any **business** of the **insured**;

b)  **property damage** to property owned by the **insured**;

c)  **property damage** to property rented to, occupied or used by or in the care of the **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d)  **bodily injury** to any person eligible to receive any benefits required to be provided or voluntarily provided by the **insured** under any worker's or workmen's compensation, non-occupational disability or occupational disease law; or

e)  **bodily injury** or **property damage** for which any **insured** under this policy is also **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon exhaustion

of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3.  **Coverage F — Medical Payments to Others**, does not apply to **bodily injury**:

a)  to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by any **insured**;

b)  to any person provided benefits under worker's or workmen's compensation, non-occupational disability or occupational disease law;

c)  to any person, other than a **residence employee** of an **insured**, regularly residing in a part of the **insured location**.

## SECTION II — ADDITIONAL COVERAGES

**We** cover the following. These are in addition to the limits of liability.

1.  **Claim Expenses.**

**We** pay:

a)  expenses incurred by **us** and costs taxed against any **insured** in any suit **we** defend;

b)  premiums on bonds required in a suit defended by **us**. **We** do not pay for bond amounts greater than the limit of liability for Coverage E. **We** are not obligated to apply for or furnish any bond;

c)  reasonable expenses incurred by any **insured** at our request. This includes actual loss of earnings (but not loss of other income) up to $25 per day for assisting **us** in the investigation or defense of a claim or suit;

d)  interest on the entire judgement which accrues after entry of the judgement and before **we** pay or tender, or deposit in court that part of the judgment which

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 33 of 40

does not exceed the limit of liability that applies.

2. **First Aid Expenses.**
We will pay expenses for first aid to others incurred by any **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**
We will pay up to $250 per occurrence for **property damage** to property of others caused by any insured.
We will not pay for **property damage**:
   a) to property covered under Section I of this policy;
   b) caused intentionally by any **insured** who is 13 years of age or older;
   c) to property owned by or rented to any **insured**, a tenant of any **insured**, or a resident in your household; or
   d) arising out of:
      1) business pursuits;
      2) any act or omission in connection with a premises owned, rented or controlled by any **insured**, other than the **insured location**; or
      3) the ownership, maintenance, or use of a **motor vehicle**, aircraft or watercraft.

# SECTION II — CONDITIONS

1. **Limits of Liability.**
Regardless of the number of **insureds**, claims made or persons injured, our total liability under Coverage E stated in this policy for all damages resulting from any one occurrence shall not exceed the limit of liability for Coverage E stated in the Declarations. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general conditions shall be considered to be the result of one occurrence.

Our liability under Coverage F for all medical expenses payable for **bodily injury** as a result of one accident is not more than:
   a) the limit of liability shown in the Declarations for "each person";
   b) $25,000 total per accident.

2. **Severability of Insurance.**
This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one occurrence.

3. **Duties After Loss — How to File a Claim.**
In case of an accident or occurrence the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed.
   a) give written notice to us or our agent as soon as practicable, which sets forth:
      1) the identity of the policy and **insured**;
      2) reasonably available information on the time, place and circumstances of the accident or occurrence; and
      3) names and addresses of any claimants and available witnesses;
   b) forward to us every notice, demand, summons or other process relating to the accident or occurrence;
   c) at our request, assist in:
      1) making settlement;
      2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any **insured**;
      3) the conduct of suits and attend hearings and trials;
      4) securing and giving evidence and obtaining the attendance of witnesses.
   d) under the coverage — Damage to Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the **insured's** control;
   e) the **insured** shall not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 34 of 40

incur any expense other than for first aid
to others at the time of the **bodily injury**.

**4. Duties of an Injured Person — Coverage F
— Medical Payments to Others.**
The injured person or someone acting on
behalf of the injured person shall:
a) give us written proof of claim, under
oath if required, as soon as practicable;
b) execute authorization to allow us to
obtain copies of medical reports and
records; and
c) the injured person shall submit to
physical examination by a physician
selected by us when and as often as we
reasonably require.

**5. Payment of Claim — Coverage F —
Medical Payments to Others.**
Payment under this coverage is not an
admission of liability by any **insured** or us.

**6. Suit Against Us.**
No action shall be brought against us unless
there has been compliance with the policy
provisions.
No one shall have any right to join us as a
party to any action against any **insured**.
Further, no action with respect to Coverage E
shall be brought against us until the
obligation of the **insured** has been
determined by final judgment or agreement
signed by us.

**7. Bankruptcy or any Insured.**
Bankruptcy or insolvency of any **insured**
shall not relieve us of any our obligations
under this policy.

**8. Other Insurance — Coverage E — Personal
Liability.**
This insurance is excess over any other valid
and collectible insurance except insurance
written specifically to cover as excess over
the limits of liability that apply in this policy.

**SECTION I AND SECTION II—
CONDITIONS**

**1. Policy Period.**
This policy applies only to loss under Section
I or **bodily injury** or **property damage** under
Section II, which occurs during the policy
period.

**2. Concealment or Fraud.**
We do not provide coverage for any **insured**
who has intentionally concealed or
misrepresented any material fact or
circumstance relating to this insurance.

**3. Liberalization Clause.**
If we adopt any revision which would
broaden the coverage under this policy
without additional premium within 60 days
prior to or during the policy period, the
broadened coverage will immediately apply to
this policy.

**4. Waiver or Change of Policy Provisions.**
A waiver or change of any provision of this
policy must be in writing by us to be valid.
Our request for an appraisal or examination
shall not waive any of our rights.

**5. Cancellation.**
a) **You** may cancel this policy at any time
by returning it to us or by notifying us in
writing of the date cancellation is to take
effect.
b) We may cancel this policy only for the
reasons stated in this condition by
notifying you in writing of the date
cancellation takes effect. This
cancellation notice may be delivered to
you, or mailed to you at your mailing
address shown in the Declarations.
Proof of mailing shall be sufficient proof
of notice.

1) When you have not paid the
premium, whether payable to us or
our agent or under any finance or
credit plan, we may cancel at any
time by notifying you at least 10

Copyright, North Carolina Rate Bureau, 1980

days before the date cancellation takes effect.

2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect.

4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

c) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our short rate table. When we cancel, the return premium will be pro rata.

d) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.**
We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.**
Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.**
Any **insured** may waive in writing before a loss all right of recovery against any person. If not waived, we may require an assignment of rights of recovery for loss to the extent that payment is made by us. If an assignment is sought, any **insured** shall sign and deliver all related papers and cooperate with us in any reasonable manner.
Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.**
If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a) we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b) **insured** includes:

1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, North Carolina Rate Bureau, 1980

Case 3:20-cv-00212-KDB-DSC   Document 1-1   Filed 04/09/20   Page 36 of 40

IN WITNESS WHEREOF, Allstate has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned in the declarations by an authorized agent of Allstate.

Secretary

President,
Personal Property & Casualty

## OPTIONAL ENDORSEMENTS

The following endorsement(s) apply when indicated by a specific premium charge in the declarations:

**Comprehensive Form
MH(F)-3 (7-80)**

For the premium charged, Coverage A and B, Perils Insured Against are deleted. The following is substituted.

Under Coverage A and B, we cover all risks of direct physical loss except:

1) Losses excluded under Section I — Exclusions.

2) Freezing of a plumbing, heating or air conditioning system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. The dwelling must be vacant, unoccupied or being constructed. You have coverage if you have used reasonable care to:
   a) maintain heat in the building; or
   b) shut off the water supply and drain the system and appliances.

3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

4) Vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not vacant.

5) Continuous or repeated seepage or leakage of water or steam over a period of weeks, months or years from the plumbing, heating or air conditioning system or from a household appliance.

6) Wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from farming or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals. If any of these cause water to escape from a plumbing, heating or air conditioning system or household appliance, we cover loss caused

Copyright, North Carolina Rate Bureau, 1980

Page 15

by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

7) Freezing, thawing or the weight of ice or water causing loss to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, wharf, or dock.

Under items 2 through 7, any ensuing loss not excluded is covered.

We cover direct loss to property in Coverage C caused by the Perils Insured Against amended as follows:

10) Breakage of glass or safety glazing material is deleted.

11) Falling objects. This peril does not include loss to property contained in the building unless the roof or an exterior wall of the building is first damaged by the falling object.

12) Weight of ice, snow, or sleet which causes damage to property contained in the building if the weight of ice, snow or sleet first damages the building.

14) Accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system or from within a household appliance.

This peril does not include loss:

a) to the system or appliance from which the water or steam escaped; or
b) caused by or resulting from freezing.

This endorsement does not increase the limits of liability in this policy. All other provisions of this policy apply.

**Mobile-Homeowners Replacement Cost Loss Settlement**
**MH(F)-48 (8-83)**

For an additional premium Section I—Condition #3 Loss Settlement is replaced by the following:

3. Loss Settlement, Covered Property losses are settled as follows:
   a. personal property, detachable building items including screens, storm doors and windows, and window air conditioners, and structures that are not buildings at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;
   b. carpeting, domestic appliances, awnings, outdoor antennas, outdoor equipment, curtains and drapes, whether or not attached to buildings, furniture and equipment furnished by the maker or dealer or replacements of these, at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;
   c. mobile home buildings including all parts and accessories built into the structure and utility tanks attached under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
      (1) If at any time of loss the amount of insurance in this policy on the damaged building is 80 percent or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amount:
         (a) the limit of liability under this policy applying to the building at the time of loss;
         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

Copyright, North Carolina Rate Bureau, 1980

(c) the amount actually or necessarily spent to repair or replace the damaged building on the residence premises or some other premises within the state of North Carolina.

(2) If at the time of loss the amount of insurance in this policy on the damaged building is less than 80 percent of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceeding the limit of liability under this policy applying to the building;

(a) the actual cash value of that part of the building damaged; or

(b) that portion of the cost to repair or replace without deduction for depreciation, that part of the building damaged which the

total amount of insurance in this policy on the damaged building bears to 80 percent of the replacement cost of the building.

(3) When the cost to repair replace the damage is more than $1000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

All other provisions of this policy apply.

Copyright, North Carolina Rate Bureau, 1980

NC

★ INSURANCE

1201 Mail Service Center
Raleigh, NC 27699-1201



CERTIFIED MAIL

7019 1120 0000 8970 9242

Allstate Insurance Company
3075 Sanders Rd., Suite H1E
Northbrook, IL 60062



Hasler
03/17/2020
US POSTAGE