UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-212-MOC-DSC

| | |
|---|---|
| MICKEY E. CROWE,<br>MARY E. CROWE,<br><br>    Plaintiffs,<br>vs.<br><br>ALLSTATE INSURANCE CO.,<br><br>    Defendant. | **ORDER** |

**THIS MATTER** comes before the Court on the parties' cross Motions for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. Nos. 6, 8).

**I. BACKGROUND**

This is a dispute over insurance coverage between Plaintiffs Mickey Crowe and Mary Crowe and Defendant Allstate Insurance Company. Plaintiffs filed this action on March 4, 2020, in Gaston County Superior Court, seeking a declaratory judgment on the issue of whether Plaintiffs are entitled to insurance coverage, and also bringing a claim for unfair and deceptive trade practices under North Carolina law, based on Defendant's denial of coverage, under N.C. GEN. STAT. §§ 58-63-15(11) and 75-1.1 et seq. (Doc. No. 1-1).

On April 9, 2020, Defendant removed the action to this Court based on diversity jurisdiction, under 28 U.S.C. § 1332. (Doc. No. 1). On May 7, 2020, Defendant filed its answer. (Doc. No. 5). Plaintiffs filed a motion for judgment on the pleadings on May 12, 2020, as to their claim for declaratory relief only. Defendant filed its own motion for judgment on the pleadings on May 26, 2020, as to all claims. This Court held a hearing on both parties' motions

1

on July 15, 2020. This matter is ripe for disposition.

**II. FACTS**

The following facts are undisputed:

Plaintiffs Mickey and Mary Crowe financed the purchase of a mobile home and parcel of real property located at 1606 Atkins Place, Gastonia, North Carolina (hereinafter "Atkins Place"). (Doc. No. 1-1, p. 4). The deed of trust evidencing Plaintiffs' security interest in Atkins Place is recorded in Book 3709, page 549 of the Gaston County Registry. (Id.). The instrument identifies Plaintiffs as beneficiaries to Atkins Place. (Doc. No. 5-4 p. 2). It also secures Plaintiffs' advancement of $55,500.00 for the property. (Id.).

On May 5, 2010, Mary Anne Harvell ("Ms. Harvell") executed a deed for Atkins Place whereby she agreed to assume and pay in full the balance of Plaintiffs' note and deed of trust. (No. 1-1, p. 4; Doc. No 5-5, p. 2). This deed was recorded in Book 4513, page 2002 of the Gaston County Registry. (Id.). The deed identifies Atkins Place as Ms. Harvell's primary residence. (Id.).

Defendant provided insurance coverage for Atkins Place. (Doc. No. 1-1, p. 11-17; Doc. No. 5, p. 2). In policy number 968810428, Ms. Harvell was a named insured. (Id.). The policy identifies Plaintiffs Mickey and Mary Crowe as mortgagees. (Doc. No. 1-1, p. 15). Defendant insured Atkins Place for the face amount of $56,000. (Doc. No. 1-1, pp. 15-16). The policy was in force and effect from September 16, 2017, through September 16, 2018. (Doc. No. 1-1, pp. 15-16; Doc. No. 5 p. 2).

In relevant part, the policy states:

*COVERAGE A—DWELLING*

We cover:

a) the mobile home on the residence premises shown in the Declarations used principally as a private residence . . .

(Doc. No. 1-1, p. 25).

*SECTION I – PERILS INSURED AGAINST*

We insure for direct loss to the property described in Coverages A, B, and C caused by:
1. Fire or lightning . . .

(Doc. No. 1-1, p. 27).

14. Loss Payable Clause.

The word "Lienholder" includes a trustee. If a lienholder is named in this policy, a loss payable under Coverage A, B, or C will be paid to the lienholder and you, as interests appear. If more than one lienholder is named, the order of payment will be the same as the order or precedence of liens . . . **If we deny your claim, that denial will not apply to a valid claim of the lienholder**, if the lienholder:

a) Notifies us of a change in ownership, occupancy, or substantial risk of which the lienholder is aware;

b) Pays any premium due under this policy on demand, if you have neglected to pay the premium;

c) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suite Against Us, and Loss Payment apply to the lienholder . . .

(Doc. No. 1-1, p. 31) (emphasis added).

On December 22, 2017, Atkins Place suffered a direct loss caused by fire. (Doc. No. 1-1, p. 6; Doc. No. 5, p. 2). Due to the fire loss, the value of the property was $0.00. (Doc. No. 5-1, p. 4, Doc. No. 5-2, p. 3). Ms. Harvell submitted a claim for insurance benefits under the policy. (Doc. No. 1-1, pp. 4-5; Doc. No. 5, p. 2). Ms. Harvell provided documents in support of the claim and an examination under oath as required by the policy. (Id.). Defendant denied Ms. Harvell's claim for benefits. (Doc. No. 5, p. 2). Defendant then denied Plaintiffs' claim for

3

benefits as well.  (Id.).  Finally, before Plaintiffs filed this action, Plaintiffs recorded an estoppel deed on December 11, 2019, signed by Ms. Harvell, which served as a deed in lieu of foreclosure of the Atkins Place property.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides "after the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Colin v. Marconi Commerce Sys. Empls.' Ret. Plan, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004).  In resolving a motion, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the Court may take judicial notice.  (Id.). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered along with the factual allegations of the complaint and answer.  (Id.).  A motion under Rule 12(c) has appropriately been used for resolving declaratory judgment actions involving the construction of insurance policies.  See, e.g., Pacific Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 406 (4th Cir. 1998).

### IV. DISCUSSION

Here, Plaintiffs seek a declaratory judgment from this Court, finding that Defendant breached the insurance contract between the parties.  Under North Carolina law, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction."  N.C. Farm Bureau Mut. Ins. v. Mizell, 138 N.C. App. 530, 532 (2000).  An insurance policy is a contract, and courts look to the parties' intent to determine the meaning of the policy language.  Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380

4

(1986). Provisions in the policy extending insurance are liberally construed in favor of coverage. State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 537 (1986). Any ambiguity in the contract will be resolved in favor of the insured against the insurance company. Maddox v. Colonial Life & Accident Ins. Co., 303 N.C. 648, 650 (1981). Once it has been determined that the insuring language embraces a particular claim, the burden shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage. Nationwide Mutual Fire Ins. Co. v. Allen, 68 N.C. App. 184, 188 (1984). "Any doubt as to coverage is to be resolved in favor of the insured." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 693 (1986).

Here, the certified insurance policy is central to Plaintiffs' complaint and its authenticity has not been challenged. Plaintiffs are expressly identified as mortgagees on the policy declarations. (Doc. No. 1-1, p. 15). The amount of insurance obtained ($56,000) mirrors the value of Plaintiffs' investment of $55,500. (Doc. No. 5-4, p. 2). The complaint alleges, without challenge by Defendant, that the insurance was procured for the benefit and protection of Plaintiffs' security interest in the Atkins Place property, as evidenced by the deed of trust and the assumption of the mortgage by Ms. Harvell. (Doc. No. 1-1, p. 5; Doc. No. 5, p. 2). Defendant does not dispute the fact that it provided coverage for Atkins Place, nor does it dispute the fact that Atkins Place suffered a direct loss from fire. Defendant also has not disputed that the difference in market value for the property before and after the loss is $55,500.00; that Ms. Harvell submitted a claim, necessary documentation, and provided an examination under oath; and that Defendant nonetheless denied her claim and then also denied Plaintiffs' claim.

Here, Defendant's pleadings indicate that Ms. Harvell's own claim to the insurance proceeds was denied because Defendant suspected arson as the cause of the fire. See (Doc. No. 7 at 7). As both parties agreed during the hearing before this Court held on July 15, 2020,

5

however, any misconduct by Ms. Harvell does not affect Plaintiffs' coverage claim. North Carolina courts have consistently held, in cases with similar standard loss payable clauses, that a separate contract exists between an insurer and a mortgagee that is enforceable regardless of the insured's conduct. See Nationwide Mut. Ins. Co. v. Dempsey, 128 N.C. App. 641, 642, 495 S.E. 2d 914, 916 (1998) (finding that lienholder under an automobile policy could recover benefits where the insured intentionally set fire to the property); Chrysler Fin. Co., LLC v. South Carolina Ins. Co., 158 N.C. App. 513, 515, 581 S.E. 2d 790, 791 (2003) (relying on Dempsey, holding that the lender was allowed to recover insurance proceeds despite fraud by the insured in the application process, stating that the loss payable clause existed as a "distinct and independent contract" between the lender and the insurer). The policy language here constitutes a standard mortgage clause, and, as lienholders, Plaintiffs have been given greater coverage than Ms. Harvell. The policy is clear: "[if] we deny your claim, that denial will not apply to a valid claim of the lienholder . . . " (Doc. No. 1-1, p. 31). Thus, as the parties agree, any alleged misconduct by Ms. Harvell did not affect Plaintiffs' right to recover the insurance proceeds as the lienholder.

In opposing Plaintiffs' motion for judgment on the pleadings, Defendant argues, however, that even assuming that Plaintiffs were still valid lienholders when the fire occurred on December 22, 2017, their lienholder status was extinguished on December 11, 2019, when Plaintiffs recorded an estoppel deed at Book 5087, Pages 861-862, Gaston County Register of Deeds, signed by Ms. Harvell, which served as a deed in lieu of foreclosure of the Atkins Place property at bar. (Doc. No. 5-1). The estoppel deed was accompanied by an Affidavit Regarding Mortgage Release and Estoppel Certificate, also executed by Ms. Harvell, and recorded at Book 5087, Pages 864-866, Gaston County Register of Deeds. (Doc. No. 5-2). Defendant argues that the estoppel deed and accompanying affidavit extinguished Plaintiffs' prior lien on the Atkins

6

Place property as a matter of law. Defendant further argues that, absent valid lienholder status at the time of filing their complaint, Plaintiffs do not have a personal stake in the controversy alleged in the complaint and consequently lack standing to bring their claims.

The Court first finds that, contrary to Defendant's argument, Plaintiffs do have standing to bring this declaratory judgment action. With Article 26 of the North Carolina General Statutes, the North Carolina General Assembly created a statutory cause of action designed to establish the rights, duties, and liabilities of parties involving written contracts, including insurance policies. N.C. GEN. STAT. § 1-253. Article 26 sets the following criteria as to what persons are entitled to declaratory relief:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations . . . .

N.C. GEN. STAT. § 1-254. The phrase "any person interested under a deed, will, written contract or other writings constituting a contract" has been interpreted to allow a party to a contract, or a direct beneficiary of that contract, to have standing to seek declaratory relief. See Whittaker v. Furniture Factory Outlet Shops, 145 N.C. App. 169, 174 (2001). Standing to seek a declaration as to the extent of coverage under an insurance policy requires the party seeking relief have an enforceable contractual right under the agreement. Terrell v. Lawyers Mut. Liab. Ins. Co., 131 N.C. App. 655, 660 (1998). Whether such a right exists depends on the intent of the contracting parties. See Raritan River Steel Co. v. Cherry Bekaert & Holland, 329 N.C. 646, 651 (1991). The North Carolina Supreme Court has held that mortgagees such as plaintiffs have an independent contractual right to the insurance proceeds identified by the policy. See Green v.

Fidelity-Phenix Fire Ins. Co., 233 N.C. 321, 325–26 (1951) ("It is the accepted position in North Carolina and most other states that when the standard or union mortgage clause is attached to or inserted in a policy insuring property against loss, it operates as a distinct and independent contract between the insurance company and the mortgagee, effecting a separate insurance of the mortgage interest.").

Here, the insurance contract clearly identifies Plaintiffs as mortgagees; the insurance was procured for the benefit and protection of Plaintiffs' security interest, as evidenced by the deed of trust and the assumption of the mortgage by Ms. Harvell; the value of the contract closely mirrors the value of Plaintiffs' investment; there was a direct loss for fire; and Defendant denied coverage to both the Ms. Harvell, as the insured, and to Plaintiffs, as the lienholders. By the policy's plain language, Defendant has a contractual obligation to provide the insurance proceeds to Plaintiffs: "if a lienholder is named in this policy, a loss payable under Coverage A, B, or C will be paid to the lienholder and you . . . if we deny your claim, that denial will not apply to a valid claim of the lienholder . . ." (Doc. No. 1-1, p. 31). In sum, under the plain language of the insurance contract, Plaintiffs have standing, and the subsequent transfer of the estoppel deed from Ms. Harvell to Plaintiffs did not remove their standing to bring this declaratory judgment action.[1]

Furthermore, even if Plaintiffs' insurable interest as mortgagees was extinguished as a result of the deed transfer in lieu of foreclosure, Plaintiffs are still entitled to the damaged value of the property and any existing mortgage debt. To support its argument that Plaintiffs are not

---

[1] Indeed, as Plaintiffs' note, the issue is not truly a "standing" issue—the issue is whether Plaintiffs' rights under the insurance contract were extinguished upon the transfer of the estoppel deed from Ms. Harvell to Plaintiffs.

8

allowed to recover any insurance proceeds, Defendant relies on <u>United States v. Lititz Mutual Insurance Company</u>, 694 F. Supp. 159, 162 (M.D.N.C. 1988). In that case, plaintiff Farmer's Home Administration (FHA) was the mortgagee on a home owned by the Manuels. <u>Id.</u> at 160. The Manuel's home burned down. At the time of the loss, FHA was the mortgagee named on the insurance policy with the defendant insurance company. <u>Id.</u> The property and home were encumbered by a deed of trust. <u>Id.</u> After the fire, the Manuels conveyed their interest in the mortgaged property to FHA as full satisfaction for the mortgage debt. <u>Id.</u> FHA then filed suit against the defendant insurance company, claiming that, as the mortgagee and loss payee, it had a contractual right to the insurance proceeds. The parties filed cross summary judgment motions. <u>Id.</u>

The <u>Lititz</u> court held "as a matter of law that plaintiff's insurable interest as a mortgagee is extinguished as a result of its cancellation of the Manuels' debt." <u>Id.</u> at 162. The Court went on to state, however, that the plaintiff was still entitled to recover insurance proceeds equal to the difference between the damaged property and the existing mortgage debt. The court explained:

> Hence, the court finds as a matter of law that plaintiff's insurable interest as a mortgagee is extinguished as a result of its cancellation of the Manuels' debt. <u>However, as the assignee of the Manuels' right to the unpaid claim, plaintiff is entitled to insurance proceeds possibly to the full extent of the deficiency between the value of the damaged property and the mortgage debt</u>. <u>The court finds this to be the equitable result since there is no concern here, as in many of the cases discussed above, of the mortgagee gaining a double recovery</u>. Any unjust enrichment would have accrued to Lititz if this court had ruled otherwise since the defendant would have avoided paying proceeds to both the mortgagors and the mortgagee.

<u>Id.</u> (emphasis added).

As the <u>Lititz</u> court made clear, in the cases where a mortgagee was denied the right to insurance proceeds following the transfer of the mortgage debt from the insured, the court was

9

concerned with the mortgagee obtaining a double recovery. As in Lititz, here, there is no concern about Plaintiffs obtaining a double recovery. Thus, Plaintiffs are still entitled to insurance proceeds to the extent of any deficiency between the value of the damaged property and any existing mortgage debt. As another district court has explained, as long as the insured mortgagee does not obtain a double recovery, then this is the correct and equitable result:

> The basic premise [in similar cases] is that the mortgagee is entitled to only one recovery of its debt. . . . Thus, recovery is barred in situations where the mortgagee bids the full amount of the mortgage at foreclosure and then seeks additional recovery from the insurer . . . . However, as at least some of these decisions recognize, a mortgagee retains a viable action against the insurer even after the insured property is sold in foreclosure if the mortgagee has not recovered the full amount of its debt through the foreclosure sale.
>
> The issue left unresolved by these cases is whether a mortgagee's release of its mortgagor from a deficiency remaining after foreclosure bars the mortgagee's subsequent property insurance claim. [The insurance company] argues that it does because the mortgagee's insurable interest is extinguished for all practical purposes when the security is foreclosed and the mortgagor is released from further liability. [The mortgagee] argues that it does not, because it still has an unreimbursed deficiency, regardless of whether it retains any right to recover against [the mortgagor].
>
> Resolving this question in light of the insurable interest rule's manifest purpose, I agree with [the mortgagee] that its right to recover against [the insurance company] is not extinguished simply because it released [the mortgagor] from any deficiency remaining after the warehouse foreclosure sale. If [the mortgagee] is allowed to maintain its claim against [the insurance company], it will not reap the double recovery that the rule was intended to avoid. Moreover, following [the insurance company's] approach could well result in a windfall for the insurer if [it] is allowed to collect premium payments without having to pay an otherwise covered loss simply because the mortgagee and its borrower settle their own dispute before the mortgagee makes its insurance coverage claim. I find nothing in the language of the policy that dictates such a result.

Transamerica Ins. Co. v. Pelham Bank & Tr. Co., No. CIV. 93-296-B, 1994 WL 485761, at **2–3 (D.N.H. Sept. 2, 1994) (some citations and footnotes omitted); accord Calvert Fire Ins. Co. v. Environs Dev. Corp., 601 F.2d 851, 856 (5th Cir. 1979) ("Where a fire loss occurs and a loss-

10

Case 3:20-cv-00212-MOC-DSC   Document 13   Filed 10/30/20   Page 10 of 12

payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent the debt has been satisfied.").

Here, Defendant received insurance premium payments for years before the fire in 2017. Defendant has refused to pay out any insurance benefits to either Ms. Harvell or Plaintiffs. To hold that Plaintiffs may not recover would result in Defendant receiving a windfall—a result that would be inequitable. In sum, Plaintiffs are entitled to insurance proceeds in the amount of the value of the damaged property and any existing mortgage debt on the Atkins Place property. To this extent, Plaintiffs' motion for judgment on the pleadings is granted, and Defendant's motion for judgment on the pleadings is denied.

The Court further notes, however, that it makes no ruling at this time on Plaintiffs' claims for unfair and deceptive trade practices under North Carolina law, based on Defendant's denial of coverage, under N.C. GEN. STAT. §§ 58-63-15(11) and 75-1.1 et seq. The Court will allow the parties additional time to brief this issue, as well as the issue of the amount of coverage to which Plaintiffs contend they are entitled under the insurance policy—that is, the difference between the damaged property and any existing mortgage debt.

## V. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiffs are entitled to judgment as to their claim for declaratory relief. That is, Plaintiffs have the right to recover from Defendant the deficiency between the value of the damaged property and any existing mortgage debt. The Court will allow further briefing on this issue and on Plaintiffs' claim for unfair and deceptive trade practices.

**IT IS, THEREFORE, ORDERED** that:

11

(1) Plaintiffs' Motion for Judgment on the Pleadings, (Doc. No. 6), is **GRANTED** as to Plaintiffs' claim for declaratory judgment. To this extent, Defendant's own Motion for Judgment on the Pleadings, (Doc. No. 8), is **DENIED** in part.

(2) The parties shall be granted the opportunity to submit supplemental briefing on the issue of the amount of insurance coverage benefits to which Plaintiffs are entitled and on the issue of Plaintiffs' claim for unfair and deceptive trade practices under N.C. GEN. STAT. §§ 58-63-15(11) and 75-1.1 et seq. To this extent, Plaintiffs shall submit their own brief within thirty days of entry of this Order. Defendant shall then have twenty days in which to submit a response brief. Plaintiffs shall then have ten days to file a Reply.

Signed: October 29, 2020

Max O. Cogburn Jr.
United States District Judge